IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JACK PALMER and CARWERKS, a Montana limited liability company, | CV 14–203–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| CITY OF MISSOULA, MONTANA and MISSOULA COUNTY, MONTANA, | |
| Defendants. | |

Before the Court are Defendants' motions for summary judgment. For the

reasons explained below, the Court grants Defendants' motions for summary

judgment on Counts One, Two, Three, and Four of the Amended Complaint.

Counts Five, Six, Seven, Eight, Nine, Ten and Eleven are dismissed without

prejudice.

FACTS[1]

---

[1] The following facts are taken from Palmer's Deposition (Doc. 26-5), Plaintiffs' First
Amended Complaint (Doc. 4), and Plaintiffs' Statement of Disputed facts (Doc. 48) in response
to Defendants' Statement of Undisputed facts (Doc. 26). This District's local rules require that
"disputed" facts must contain a "pinpoint cite to a specific pleading, deposition, answer to
interrogatory, admission or affidavit before the Court to oppose each fact." D. Mont. L.R.
56.1(b). The vast majority of Plaintiffs' disputed facts fail to provide a pinpoint cite to the
factual record and, instead, attempt to challenge Defendants' undisputed facts on evidentiary

This matter arises from a case of mistaken identity. On the morning of August 9, 2012, four Missoula Police Officers responded to a disturbance at a local restaurant. The officers identified a vehicle in the restaurant drive-thru as the cause of the disturbance. After the vehicle pulled into the parking lot, a police car pulled in behind the vehicle and the police lights were activated. The driver was removed from the vehicle, given a field sobriety test, and arrested on suspicion of driving under the influence. Plaintiff Jack Palmer ("Palmer") was a passenger in the car and identified by his state issued driver's licence.

Missoula dispatch radioed that two warrants for arrest were issued for a person matching Palmer's name and date of birth. Palmer denied that the warrants were his and suggested that they may have been issued for his son, who shares his name. Palmer was searched and a significant amount of money was found. Palmer, who sells cars on behalf of Carwerks, often carries large amounts of money. Palmer says he was carrying $6,000 because he sold a car earlier that day. Palmer was arrested on the basis of the warrants and taken to the Missoula County Detention Center ("Detention Center").

At the Detention Center, Palmer was turned over to the jailer and searched.

grounds. The Court will use its discretion on whether to include these facts in the factual recitation.

He did not ask for medical assistance. Palmer was taken to a holding cell and held for four to five hours until his release. At his release, the jail returned his identification, but not his credit cards and cash. His credit cards were mistakenly given by the jail to the driver of the vehicle who had been released just before Palmer. The jail staff went and found the driver, retrieved the cards, and gave them back to Palmer. The cash was not returned and instead used as his bond. He was told to report to the court later that morning.

At the courthouse, Palmer was told that there had been a mistake with the warrants. Palmer's son, who shares his father's name, was the actual subject of the warrants. Palmer talked with the judge and had his car released from impound. He also got $3,000 in cash back. Palmer, however, asserted that he should have received more money back and complained to the court. The court told him to contact the jail. After speaking with Sheriff Carl Ibsen ("Sheriff Ibsen"), Palmer says he was told to contact the City of Missoula (the "City"). Palmer states that he contacted the police department, but did not get the disputed amount of money back.

On August 16, a week after he was arrested, Palmer went to the Missoula Mayor's Office to lodge a complaint. Palmer's name was appearing online as part of the jail roster and he wanted it removed. Palmer spoke with Captain Chris

Odlin ("Odlin") of the Missoula Police Department and told Odlin he wanted his name removed from the jail roster. Odlin contacted Sheriff Ibsen, as it was the county jail, and explained that a mistake had been made and Palmer wanted his name removed. In an email later that day, a jail administrator reported "[t]he arrest of 8/9/12 and the warrants that were entered incorrectly have been deleted." (Doc. 26-10 at 3.)

Palmer's complaint alleges eleven counts stemming from his arrest and subsequent interactions with City and County of Missoula (the "County") officials. These counts include: (1) violations of the Fourth Amendment ; (2) violations of the First Amendment; (3) violations of the Fifth Amendment; (4) an unconstitutional informal custom and policy of using excessive force in effecting arrests; (5) defamation; (6) negligence; (7) contractual interference; (8) unlawful restraint on trade; (9) assault and battery; (10) pain and suffering; and (11) infliction of emotional and mental distress. Defendants argue that summary judgment in favor of the City and County is appropriate on all counts.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of

informing the Court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The movant's burden is satisfied when the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–248. The elements of each claim determine which facts are material. *Id.* Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude entry of summary judgment. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

ANALYSIS

## I.  Federal Law Claims

Counts One, Two, and Three allege violations of Plaintiffs' federal

constitutional rights under 42 U.S.C. § 1983.  Count Four of the Amended

Complaint alleges that the City has adopted an unconstitutional informal custom

and policy of using excessive force in effecting arrests.  The Court will address

each of these federal claims in order.

### A.  Count One

Count One of the Amended Complaint alleges that the City of Missoula (the

"City") violated Palmer's Fourth Amendment rights by: (1) employing excessive

force during his arrest; (2) arresting him without probable cause; and (3) by

causing his unlawful detainment.[2]  Palmer asserts that he has suffered economic

and non-economic damages as a result of these violations.  Palmer does not name

any individual police officers in his complaint and instead seeks § 1983 liability

through the municipality, i.e. the City.

Under § 1983 jurisprudence, a municipality is not liable for the acts of a

---

[2] The County asserts that Plaintiffs' Amended Complaint fails to name the County in Counts One, Two, Three, and Four of the Amended Complaint.  The Court agrees and finds that Counts One through Four do not allege claims against the County.

tortfeasor simply because the tortfeasor is employed by the municipality. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.").  Instead, a municipality is liable under § 1983 for constitutional violations "only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (quoting *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978).

A "policy or custom of a municipality" can be shown in three ways: "(1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation and quotation marks omitted).  However, a custom or policy "may be

inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001) (internal quotation marks and citation omitted).

Here, first, Plaintiffs fail to show that the City had a custom or policy of using excessive force in effectuating arrests. Thus, even if Palmer's constitutional rights were violated during his arrest, Plaintiffs fail to cite to any evidence in the record which would establish an official custom or policy that caused these constitutional violations.[3] Instead, Plaintiffs argue that the manner in which Palmer was arrested "evidences an informal custom whereby officers disregard the official police policies regarding arrest and use of force." (Doc. 47 at 9.) In support of this argument, Plaintiffs' brief in opposition cites to only one previous instance where use of force was an issue.[4] (Doc. 47 at 9.) This single, isolated incident is insufficient to show a "longstanding practice or custom" by the City. *Menotti*, 409 F.3d at 1147. Further, this lone incident fails to imply that the use of

---

[3] The Court has viewed the videotape of Palmer's arrest (Doc. 26-7), and there is nothing in this videotape to suggest that Plaintiffs' factual assertions of excessive force have any merit.

[4] Plaintiffs refer to "the Peschel matter" as evidence of an informal policy or custom of the City in utilizing excessive force during arrests. The Court presumes that Plaintiffs are referring to *Peschel v. City of Missoula*, 686 F. Supp. 2d 1107 (D. Mont. 2009), and its associated cases.

excessive force is a widespread practice by the police department. *Nadell*, 268 F.3d at 929. Plaintiffs simply fail to produce any support for the claim that the use of excessive force by the Missoula police is a routine custom.

Second, Plaintiffs also argue that the City is liable under § 1983 because it failed to properly train its employees regarding mistaken identity. Specifically, because the arresting officer was not properly trained in confirming warrants, Plaintiffs argue, she did not properly respond to Palmer's statement that the warrants were not his. Again, Plaintiffs fail to identify any deficient official policy or custom in support of this theory. Further, there is no evidence that arresting individuals because of mistaken identify is a widespread or recurring practice in Missoula. Thus, even if Palmer's constitutional rights were violated by failing to train officers regarding mistaken identity, this single incident does not establish a pattern of constitutional violations. *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014) ("A single instance is not sufficient to show that a practice is so widespread as to have the force of law.")

Third, like the previous allegations, any claim that the City is liable for Palmer's alleged unconstitutional detainment must also fail. As stated above, even if Palmer's constitutional rights were violated by the City, Plaintiffs must show a longstanding practice or custom of unlawfully detaining individuals. Plaintiffs fail

to provide any evidence of the existence of such a policy or custom.

Finally, Plaintiff also argue that the City is liable because an authorized policymaker was deliberately indifferent to Palmer's constitutional rights. Plaintiffs suggest that Officer Vreeland, an officer at the scene of the arrest, was an authorized policymaker and the city is liable as a result. Plaintiffs are mistaken.

The issue of whether a particular official is a final policymaking authority is a question of state law. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Under Montana law, the police chief has "charge and control of all police officers." Mont. Code Ann. § 7-32-4105. Plaintiffs do not present any evidence to suggest that Missoula's Chief of Police bestowed or delegated any authority to Officer Vreeland. Plaintiffs municipal liability argument is simply not supported by the evidence. Defendants will be granted summary judgment on Count One of the Amended Complaint.

### B. Count Two

Count Two of the Amended Complaint alleges that the City violated Palmer's First Amendment rights when he went the Mayor's Office to file a complaint. Plaintiffs allege that the City, acting through Captain Odlin, threatened Palmer and ordered him to leave the Mayor's Office, depriving him of the ability to exercise his First Amendment rights.

As stated above, even if Palmer's rights were violated, he must show that a policy or custom caused the constitutional violation in order for the City to be liable under § 1983. *Menotti*, 409 F.3d at 1147. Plaintiffs fail to identify any such custom or policy. Further, Plaintiffs do not argue that Odlin was an authorized policy maker. *Id.* As such, Count Two of the Amended Complaint fails as a matter of law.

## C. Count Three

Count Three of the Amended Complaint alleges that Carwerk's Fifth Amendment due process rights were violated by the City. Specifically, Plaintiffs allege that the City, acting through the police, took money from Palmer without due process and deprived Carwerks of its property. Plaintiffs' claim fails as a matter of law.

As stated above, Plaintiffs allege that City violated Carwerks' Fifth Amendment rights. The Fifth Amendment, however, only applies to actions of the federal government or its actors. *Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1406 (9th Cir. 1996) (citing *Public Utilities Commission v. Pollak*, 343 U.S. 451, 461 (1952). Plaintiffs do not dispute this and instead argue that the claim is based on "unreasonable seizure of property." (Doc. 47 at 8.) Plaintiffs, however, have failed to amend their complaint to assert such a

claim.  Therefore, their Fifth Amendment claim fails as a matter of law and summary judgment in favor of Defendants will be granted on Count Three.

### D.  Count Four

Count Four of the Amended Complaint alleges that the City has adopted an unconstitutional custom and policy of using excessive force when effecting arrests.   As stated above in part A of section I, Plaintiffs have failed to identify any official custom or policy requiring the mandating the use of excessive force. Further, in their brief in opposition to the motion for summary judgment, Plaintiffs fail to provide any examples supporting a permanent or well-settled practice of using excessive force by the City.  Defendants' motion for summary judgement on Count Four will be granted for the reasons explained in part A of section I.

## II.  State Law Claims

In addition to their federal claims, Plaintiffs bring multiple state law claims against the City and the County.  However, as stated above, summary judgment in favor of Defendants has been granted on all federal claims.  As such, only claims based on state law remain before this Court.  Accordingly, this Court will exercise its discretion under 28 U.S.C. § 1367 and decline jurisdiction over the state law claims.  Plaintiffs' state law claims will thus be dismissed without prejudice.  The

Court finds that this is best course of action for four reasons.

First, the express language of § 1367 permits a federal district court to decline supplemental jurisdiction over state law claims when that "court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, as provided above, all claims based on federal original jurisdiction have been dismissed. *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (court did not abuse its discretion by declining to exercise supplemental jurisdiction over the remaining state law claims when federal claims were dismissed); *see also San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998) (district court not required to provide explanation when declining jurisdiction under § 1367(c)(3)).

Second, the parties will not be substantially inconvenienced by this Court declining jurisdiction. *See Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (supplemented by *Acri v. Varian Associates, Inc.*, 121 F.3d 714 (9th Cir. 1997) (decision to decline jurisdiction is informed by values of economy, convenience, fairness, and comity). This case has not gone to trial and is still at the summary judgment phase of litigation. If Plaintiffs decide to refile in state court, any discovery, pleadings, or briefing can still be utilized by the parties in that proceeding, albeit with minimal editing.

Third, declining jurisdiction will not prejudice or result in any unfairness to the parties. Specifically, Plaintiffs will not be prevented from filing their claims due to statute of limitations concerns. As stated in § 1367, "[t]he period of limitations for any claim asserted under [supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Plaintiffs will thus have at least thirty days to file their claims in state court.

Finally, the Court finds that the principle of comity weighs in favor of declining jurisdiction. For example, Plaintiffs assert state law arguments based on the alleged negligence of the arresting officers and the breach of their duty to prevent Palmer from being unlawfully detained. In response, the City asserts that it did not owe a duty under state law. (Doc. 24 at 5.) The City, however, fails to cite to any compelling state authority for this argument. Thus, this Court finds that a state court is in the best position to interpret and resolve the precise question at issue, i.e., did the City owe a duty to Palmer under state law?

Accordingly, IT IS ORDERED that:

(1) Defendants' motions for summary judgment (Docs. 21, 29 ) on Counts One, Two, Three and Four are GRANTED.

(2) Counts Five, Six, Seven, Eight, Nine, Ten, and Eleven are DISMISSED

without prejudice.

(3) All other motions (Docs. 23, 33, 36) are DENIED as moot.

(4) The Jury Trial set for February 1, 2016, is VACATED. All other pretrial dates are VACATED.

(5) The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiffs on Counts One, Two, Three, and Four.

This case is CLOSED.

DATED this 20th day of January, 2016.

Dana L. Christensen, Chief District Judge
United States District Court